**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**STATESBORO DIVISION**

| | |
|---|---|
| MONITRONICS INTERNATIONAL, INC. d/b/a BRINKS HOME SECURITY, | ) ) ) ) CIVIL ACTION FILE |
| Plaintiff, | ) NO. 6:20-cv-00079-RSB-BWC |
| v. | ) ) |
| JACK H. MYERS, | ) ) |
| Defendant. | ) ) |

**FINAL JUDGMENT AND**
**PERMANENT INJUNCTION BY CONSENT**

THIS MATTER having been commenced by Plaintiff Monitronics International, Inc. d/b/a Brinks Home Security ("Plaintiff" or "Brinks Home Security") against Defendant Jack H. Myers ("Defendant" or "Myers"), and the Defendant having agreed to consent to this Final Judgment and Permanent Injunction by Consent, as evidenced by the signatures of their lawyers below, the Court finds as follows:

**FINDINGS OF FACT**

The Parties are currently engaged in litigation in the above-styled matter (the "Lawsuit") in which Plaintiff seeks injunctive relief and damages for : (1) Unfair and Deceptive Trade Practices in violation of O.C.G.A. § 10-1-373 (Count 1); (2)

violations of Section 43(a) of the Lanham Act (Count 4); Tortious Interference with Business and Contractual Relations (Counts 5 and 6); and Misappropriation of Trade Secrets (Count 9).

Brinks Home Security is one of the largest home security and alarm monitoring companies in the United States. Brinks Home Security operates its business, in part, by entering into contracts with certain third party affiliates, through which those affiliates grant Brinks Home Security a right of first refusal to purchase alarm contracts sold and installed by such affiliates.

During the period of the relationship with Brinks Home Security, affiliates and their sales personnel have access to proprietary, confidential, and trade secret information of Brinks Home Security in connection with the sale of alarm contracts to Brinks Home Security. Affiliates also agree to preserve Brinks Home Security's trade secrets and confidential information as confidential.

The trade secrets and confidential and proprietary information that affiliates and their agents and employees have access to includes Brinks Home Security's e-contract platform, Brinks Home Security's customer contracts, and Brinks Home Security's customer lists and data. It also includes Brinks Home Security's sales processes, programs, methods, and techniques Brinks Home Security affiliates use when enrolling new customers for services.

This information is economically valuable to Brinks Home Security because it is not generally known or readily ascertainable by Brinks Home Security's competitors in the security industry, it having been accumulated over years at considerable time and expense of Brinks Home Security.

Accordingly, Brinks Home Security goes to great lengths to maintain its secret and proprietary nature, including by requiring password access and by requiring its affiliates to enter into nonsolicitation and nondisclosure agreements.

Defendant Jack H. Myers is employed as a sales agent or representative of an alarm company that previously had, but no longer has, an affiliate relationship with Brinks Home Security.  As such Myers originated alarm contracts that were sold to Brinks Home Security via the affiliate program and subject to the affiliates' contracts with Brinks Home Security. Brinks Home Security contends that Myers accessed proprietary, confidential, and trade secret information of Brinks Home Security, including customer lists and data, pricing information, and the expiration dates or terms under which Brinks Home Security's customers could terminate their alarm monitoring contracts.  Specifically, Myers had access to and used Brinks Home Security's customer lists, data, and pricing information that is confidential and trade secret information belonging to Brinks Home Security.

Myers also had access to Brinks Home Security's e-contracting platform, which exists to facilitate the "sign up" process by sales affiliates in the field. Sales

affiliates use the platform to populate contract templates with customer information when signing up new customers and/or renewing customer contracts. These agreements can then be uploaded via the platform in connection with an affiliate's assignment of contracts to Brinks Home Security.

Brinks Home Security recently terminated its relationship with the affiliate for which Myers acts as a sales representative.

Subsequent to that time, Myers was no longer authorized to access or utilize Brinks Home Security's confidential, proprietary, and trade secret information, including without limitation, Brinks Home Security's customer lists and data, pricing information, and Brinks Home Security's e-contracting platform.

In early July 2020, Brinks Home Security learned of complaints from some of its customers located in Georgia, South Carolina, and elsewhere that Myers was soliciting Brinks Home Security's customers and signing them up for a competitor's services when they had no desire to change their alarm monitoring provider and were misled or confused about the nature of the products and services they were purchasing from Myers.

Customers were confused and believed or understood that Myers worked for Brinks Home Security and that he was checking in with the customer simply to renew the customers' Brinks Home Security contracts. Instead, Myers was signing

the customers up for service with a different alarm monitoring service offered by a Brinks Home Security competitor.

The customer complaints reflect that customers were confused and/or misled as to Myers' purported affiliation with Brinks Home Security and the nature of the products and services they were being signed up for. In multiple cases, customers were induced to switch their home alarm monitoring services when they believed they were merely renewing their contracts with Brinks Home Security.

Brinks Home Security has received calls from customers complaining that their Brinks Home Security service was terminated or changed by Myers without their permission or informed consent, and asking to have their service changed back to Brinks Home Security. In some cases, customers assert that Myers made false statements to customers that Brinks Home Security is "changing everybody into a new system with new technology," in order to induce them to switch to a competitor. In some instances customers found themselves locked into two contracts because Myers signed them up for the new service before the termination of their existing Brinks Home Security contract.

Brinks Home Security also has received complaints that Myers misrepresented to customers that Brinks Home Security is in bankruptcy, or going out of business, or no longer servicing the customers' service areas.

5

## **CONCLUSIONS OF LAW**

The parties agree that Brinks Home Security has shown (1) Unfair and Deceptive Trade Practices in violation of O.C.G.A. § 10-1-373 (Count 1); (2) violations of Section 43(a) of the Lanham Act (Count 4); Tortious Interference with Business and Contractual Relations (Counts 5 and 6); and Misappropriation of Trade Secrets (Count 9).

Brinks Home Security has established that it has been, and continues to be, irreparably harmed by Defendant's conduct, negatively affecting Plaintiff's goodwill, reputation, relationships with its customers and in the marketplace in general, none of which is readily measurable in money damages.

Plaintiff has established that there is no adequate remedy at law. Furthermore Plaintiff has shown that the loss of its confidential information and goodwill with its customers is irreparable.

The threatened injury to Brinks Home Security outweighs the harm the relief may inflict on Myers as Myers has no legitimate interest in engaging in deceptive, misleading, and unlawful sales tactics. Brinks Home Security has not requested that Myers be enjoined from pursuing legitimate sales activities.

The injunction will not be adverse to, and will instead serve, the public interest by prohibiting only unlawful conduct. The Lanham Act gives courts the power to grant injunctions to prevent a violation of Section 43(a) of the Act. 15 U.S.C. § 116.

This authority is wielded under the procedures set forth in the Federal Rules of Civil Procedure. Fed. R. Civ. P. 65. The Court also has authority to grant the injunctive relief sought by the parties under the All Writs Act, which permits the Court to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. Furthermore, Brinks Home Security's claims under Georgia state law further permit the Court to award injunctive relief, including Unfair and Deceptive Trade Practices in violation of O.C.G.A. § 10-1-373; Tortious Interference with Business and Contractual Relations; and Misappropriation of Trade Secrets in violation of O.C.G.A. § 10-1-761.

**THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED:**

That the Defendant Jack H. Myers, his agents, employees, and those persons acting in concert with him, under his control or on his behalf, directly or indirectly (collectively, the "Myers Parties"), are permanently enjoined from engaging in the following Prohibited Sales Practices:

a) The Myers Parties must not make any false or misleading statement(s) implying in any manner to any person in any context that:

> 1. Brinks Home Security is going out of business, no longer in business, or no longer associated with the company that originally installed a customer's service equipment because of any bankruptcy filing.

7

2. Myers or any other entity by which the Myers Parties are employed or otherwise independently contracted is acquiring, merging with, has taken over, or is part of Brinks Home Security.

3. Myers or any other entity for which the Myers Parties are contracted is taking over the monitoring or servicing of Brinks Home Security's accounts, has purchased the customer's account from Brinks Home Security, is a "sister company" of Brinks Home Security, or is an affiliate of Brinks Home Security.

4. Myers or any other entity for which the Myers Parties are contracted, work "with," are a technician of, an installer of, a contractor of, or an agent of Brinks Home Security.

5. Brinks Home Security is not a "local company," is no longer servicing a particular area, or is "moving out of state."

6. Brinks Home Security is changing its name.

7. Myers or any other entity for which the Myers Parties are contracted will "update" or "upgrade" the customer's equipment without disclosing that such proposal actually requires an agreement with a company other than Brinks Home Security and would result in changing the customer's current service provider.

    8. Brinks Home Security is not, or has stopped, monitoring or the servicing of the alarm system, or that Brinks Home Security will no longer be able to monitor or service the alarm system, for any reason.

 b) The Myers Parties must not impersonate or represent in any way to Brinks Home Security, including (without limitation) to Brinks Home Security's customer care department, that they are a Brinks Home Security customer.

 c) The Myers Parties must not sign cancellation letters for or on behalf of Brinks Home Security's customers.

 d) The Myers Parties must not misrepresent any reason for Brinks Home Security's customers' cancellation of their service.

 e) The Myers Parties must not make any false or misleading statement(s) regarding the function, performance, capabilities, specifications, features, requirements, reliability, or design of Brinks Home Security's equipment, alarm system, or service.

 f) The Myers Parties must not make any false or misleading statement(s) implying that the customer is "out of contract" with Brinks Home Security when the customer is still under the initial term of his/her contract with Brinks Home Security.

 g) The Myers Parties must not make any false or misleading statement(s) implying that Brinks Home Security has lost or is about to lose its license and/or licensing status in any jurisdiction.

  h) The Myers Parties must not offer or agree to pay off the remaining obligation during the initial term of any customer's agreement with Brinks Home Security.

  i) The Myers Parties must not use, sell, or access any confidential customer list or other confidential customer information and data of Brinks Home Security for any reason.

  j) The Myers Parties must not use, share, sell, or access any Brinks Home Security contract template.

  k) The Myers Parties must not fail to maintain the confidentiality of any proprietary, confidential, and trade secret information of Brinks Home Security.

**Application**

 For the avoidance of doubt, the terms of this injunction do not prevent Myers from engaging in legitimate and lawful alarm monitoring contract sales. Should Myers' employer enter into an affiliate relationship with Brinks Home Security or a Brinks Home Security Affiliate, or be acquired by Brinks Home Security or another Brinks Home Security Authorized Dealer, the terms of this injunction would not prohibit Myers from using or accessing Brinks Home Security's customer information, data, and contract forms consistent with and subject to his employer's agreement with Brinks Home Security.

**Duty to Confer Before Enforcement**

The parties further agree, and the Court **ORDERS**, that they must confer in good faith to resolve any claims arising out of a violation of this Injunction before seeking Court intervention except where the threat of immediate, irreparable harm would render a conference impracticable. Any such enforcement or further injunctive relief is in addition to, and supplements, any other remedies Brinks Home Security has at law or in equity.

In the event that any party identifies a Brinks Home Security account that has been solicited by the Myers Parties through the use of Prohibited Sales Practices, the identifying party will notify the other party (either Brinks Home Security or Myers) in writing within a reasonable time, but in no event more than seven (7) business days after identifying the violation. Thereafter, Myers shall use his best efforts to transition the account back to Brinks Home Security within 14 days. If Myers refuses to assist with the transition or fails to use his best efforts to transition the account, Brinks Home Security may seek to enforce this Injunction only after conferring in good faith with the relevant party. Brinks Home Security must detail its attempts to confer in good faith in any motion seeking enforcement of this Injunction.

**WHEREFORE,** the Court dismisses this action, with prejudice, with each party bearing its own fees and costs. The Court **DIRECTS** the Clerk of Court to **ENTER** this judgment, **TERMINATE** all pending motions as moot, and **CLOSE** this case.

**SO ORDERED**, this 30th day of December, 2020.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

**Submitted and approved as to form by:**

| HOLLAND & KNIGHT LLP | BROOKS LAW OFFICE |
| --- | --- |
| */s/  Patrick B. Reagin* | */s/  Eugene C. Brooks, IV* |
| J. Allen Maines, Esq. (*pro hac vice*) | Eugene C. Brooks, IV |
| Georgia Bar No. 466575 | Georgia Bar No. 084750 |
| John M. Hamrick, Esq. | P.O. Box 9545 |
| Georgia Bar No. 322079 | Savannah, Georgia 31412 |
| Patrick B. Reagin, Esq. (*pro hac vice*) | Telephone: (912) 233-9696 |
| Georgia Bar No. 502117 | Facsimile: (912) 232-8620 |
| Regions Plaza, Suite 1800 | E-mail:  gbrooks@brooks-law.com |
| 1180 West Peachtree Street | |
| Atlanta, Georgia  30309 | *Attorney for Defendant Jack H. Myers* |
| Telephone:  (404) 817-8500 | |
| Facsimile:   (404) 881-0470 | |
| E-mail:   allen.maines@hklaw.com | |
| E-mail:   john.hamrick@hklaw.com | |
| E-mail:   patrick.reagin@hklaw.com | |

*Attorneys for Plaintiff Monitronics International, Inc. d/b/a Brinks Homes Security*